## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| HALLEY ASCHER, GREGORY ASKEN, MELISSA BARRON, KIMBERLY BENNETT, RON BLAU, TENISHA BURGOS, KENT BUSEK,  JANE BUTLER, JENNIFER CHASE, RITA CORNISH, NATHAN CROOM, LORI CURTIS, JESSICA DECASTRO, THERESIA DILLARD, ALENA FARRELL, JANE FITZGERALD, CARROLL GIBBS, DORI GILELS, JASON GRALA, IAN GROVES, CURTIS GUNNERSON, TOM HALVERSON, CURTIS HARR, ANDREW HEDLUND, GARY ARTHUR HERR, JOHN HOLLINGSWORTH, ELIZABETH KAUFMAN, ROBERT KLINGLER, BONNIE VANDER MEULEN, REBECCA LYNN MORROW, EDWARD MUSCARA, STACEY NICKELL,  ROGER OLSON, JAMES PHELPS, WILLIAM PICOTTE, WHITNEY PORTER, CINDY PRINCE, FRANCES GAMMELL-ROACH, DARREL SENIOR, DARCY SHERMAN, ERICA SHOAF, ARTHUR STUKEY, KATHLEEN TAWNEY, JANE TAYLOR, KEITH UEHARA, MICHAEL WICK, PHILLIP YOUNG, on Behalf of Themselves and all Others Similarly Situated, | Master File No. 12-md-02311<br><br>Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br><u>JURY TRIAL DEMANDED</u> |
| Plaintiffs, | |
| vs. | |
| KIEKERT AG AND KIEKERT U.S.A., INC. | |
| Defendants. | |

Plaintiffs Halley Ascher, Gregory Asken, Melissa Barron, Kimberly Bennett, Ron Blau,

Tenisha Burgos, Kent Busek, Jane Butler, Jennifer Chase, Rita Cornish, Nathan Croom, Lori

Curtis, Jessica Decastro, Theresia Dillard, Alena Farrell, Jane Fitzgerald, Carroll Gibbs, Dori

Gilels, Jason  Grala,  Ian  Groves,  Curtis  Gunnerson,  Tom  Halverson,  Curtis  Harr,  Andrew

Hedlund, Gary Arthur Herr, John Hollingsworth, Elizabeth Kaufman, Robert Klingler, Bonnie Vander Meulen, Rebecca Lynn Morrow, Edward Muscara, Stacey Nickell, Roger Olson, James Phelps, William Picotte, Whitney Porter, Cindy Prince, Frances Gammell-Roach, Darrel Senior, Darcy Sherman, Erica Shoaf, Arthur Stukey, Kathleen Tawney, Jane Taylor, Keith Uehara, Michael Wick, and Phillip Young ("Plaintiffs"), on behalf of themselves and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to themselves and upon information and belief as to all other matters, and based on the investigation of counsel, bring this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, consumer protection, and unjust enrichment laws. Plaintiffs demand a jury trial and allege as follows:

## NATURE OF ACTION

1.      This lawsuit is brought as a proposed class action against Defendants Kiekert AG and Kiekert U.S.A., Inc. (together, "Kiekert Defendants") and unnamed co-conspirators, manufacturers, and/or suppliers of Side-Door Latches and Latch Minimodules (defined below) globally and in the United States, for engaging in a long-running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for Side-Door Latches and Latch Minimodules. According to the United States Department of Justice ("DOJ"). The conspiracy successfully targeted the long-struggling United States automotive industry, raising prices for car manufacturers and consumers alike.

2.      Plaintiffs seek to represent all persons and entities who, during the period from and including September 1, 2008 through such time as the anticompetitive effects of the Kiekert Defendants' conduct ceased ("Class Period"), purchased or leased a new four-wheeled passenger automobile, van, sports utility vehicle, crossover, or pickup truck ("Vehicle") in the United

States not for resale which included one or more Side-Door Latch(es) and Latch Minimodule(s) as a component part, which were manufactured or sold by the Kiekert Defendants, any current or former subsidiary of the Kiekert Defendants, or any co-conspirator of the Kiekert Defendants.

3.      An automotive "Side-Door Latch" secures an automotive door to a vehicle body and may be locked to prevent unauthorized access to a vehicle. A "Latch Minimodule" includes the Side-Door Latch and all of the related mechanical operating components, including the electric lock function. Some examples of Side-Door Latches and Latch Minimodules appear below:



http://www.kiekert.com/en/products/side-door-latches (accessed April 6, 2017).

4.      The Kiekert Defendants manufacture, market, and/or sell Side-Door Latches and Latch Minimodules throughout and into the United States. The Kiekert Defendants and their co-conspirators (as yet unknown) agreed, combined, and conspired to fix, raise, maintain and/or stabilize prices, rig bids, and allocate the market and customers in the United States for Side-Door Latches and Latch Minimodules.

5.      The DOJ's Antitrust Division is currently conducting a broad criminal investigation into illegal price-fixing and bid-rigging in the automotive parts industry. As part of its criminal investigation, the DOJ is seeking information about unlawful anticompetitive conduct in the market for a number of different but related automotive parts, and the Federal Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out

in the offices of a number of major competitors in the automotive parts industry. The automotive parts investigation is the largest criminal investigation the Antitrust Division has ever pursued, both in terms of its scope and its impact on American consumers and businesses. The ongoing cartel investigation of price-fixing and bid-rigging in the automotive parts industry has yielded, to date, more than $2.9 billion in criminal fines.

6.     On March 7, 2017, the DOJ announced that Kiekert AG agreed to plead guilty to a criminal conspiracy to allocate sales, rig bids, and fix the prices of Side-Door Latches and Latch Minimodules sold to Ford Motor Company ("Ford") and its subsidiaries in the United States and elsewhere. *See https://www.justice.gov/opa/pr/kiekert-ag-plead-guilty-bid-rigging-involving-auto-parts* (accessed May 15, 2017). As part of that guilty plea, Kiekert AG agreed to pay a $6.1 million criminal fine. *Id*.

7.     According to the associated Criminal Information filed by the DOJ, Kiekert AG and its co-conspirators supplied Side-Door Latches and Latch Minimodules to Ford for installation in vehicles manufactured and sold in the United States. The Criminal Information further alleges that from at least September 2008 through May 2013, Kiekert AG and its co-conspirators manufactured Side-Door Latches and Latch Minimodules (a) in the United States for installation in vehicles manufactured and sold in the United States, and (b) in Mexico for export to the United States for installation into vehicles manufactured and sold in the United States.

8.     The Kiekert Defendants and their co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate the supply of, rig bids for, and to fix, stabilize, and maintain the prices of Side-Door Latches and Latch Minimodules sold to Vehicle manufacturers and others in the

United States and globally. The combination and conspiracy engaged in by the Kiekert Defendants and their co-conspirators was an unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Act, 15 U.S.C. § 1, and state antitrust, unfair competition, consumer protection, and unjust enrichment laws.

9.     According to the Criminal Information filed, the Kiekert Defendants and their co-conspirators carried out its combination and conspiracy by:

(a)     participating in meetings, conversations, and other communications to discuss the bids and price quotations to be submitted to Ford in the United States;

(b)     agreeing, during those meetings, conversations, and communications, to allocate among the corporations sales of certain Side-Door Latches and Latch Minimodules sold to Ford in the United States;

(c)     agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to Ford in the United States;

(d)     exchanging information on bids and price quotations to be submitted to Ford in the United States in order to effectuate the agreements;

(e)     submitting bids and price quotations to Ford in the United States in accordance with the agreements;

(f)     selling Side-Door Latches and Latch Minimodules to Ford in the United States at collusive and noncompetitive prices; and

(g)     accepting payment for certain Side-Door Latches and Latch Minimodules sold to Ford in the United States at collusive and noncompetitive prices.

10.     As a direct result of the anticompetitive and unlawful conduct alleged herein, Plaintiffs and the Classes (as defined below) paid artificially inflated prices for Side-Door Latches and Latch Minimodules during the Class Period and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

11.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against the Kiekert Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, consumer protection, and unjust enrichment laws, and seek to obtain restitution, recover damages, and secure other relief against the Kiekert Defendants for violations of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (1) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from the Kiekert Defendants ; and (2) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

13.     Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and the

Kiekert Defendants  reside, are licensed to do business in, are doing business in, have agents in, and are found in or transact business in this District.

14.     This Court has *in personam* jurisdiction over the Kiekert Defendants  because the Kiekert Defendants either directly or through the ownership and/or control of their subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Side-Door Latches and Latch Minimodules throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; and (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. The Kiekert Defendants also conduct business throughout the United States, including in this jurisdiction, and they have purposefully availed themselves of the laws of the United States.

15.     The Kiekert Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

16.     The activities of the Kiekert Defendants and their co-conspirators directly targeted the United States Vehicle market and were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. The Kiekert Defendants' products are sold in the flow of interstate commerce.

17.     Side-Door Latches and Latch Minimodules manufactured abroad by the Kiekert Defendants and sold for use in Vehicles in the United States are goods brought into the United States for sale, and therefore constitute import commerce. To the extent any Side-Door Latches

and Latch Minimodules are purchased in the United States, and such Side-Door Latches and Latch Minimodules do not constitute import commerce, the Kiekert Defendants' activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

18.    By reason of the unlawful activities hereinafter alleged, the Kiekert Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. The Kiekert Defendants  directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for Side-Door Latches and Latch Minimodules, which conspiracy unreasonably restrained trade and adversely affected the market for Side-Door Latches and Latch Minimodules.

19.    The Kiekert Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased or leased a new Vehicle in the United States not for resale which included one or more Side-Door Latch and/or Latch Minimodule.

## PARTIES

### Plaintiffs

20.    Plaintiff Halley Ascher is a District of Columbia resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

21.    Plaintiff Gregory Asken is a Nevada resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

22.     Plaintiff Melissa Barron is a California resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

23.     Plaintiff Kimberly Bennett is an Arkansas resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

24.     Plaintiff Ron Blau is a Massachusetts resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

25.     Plaintiff Tenisha Burgos is a New York resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

26.     Plaintiff Kent Busek is a North Dakota resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

27.     Plaintiff Jane Butler is a Wisconsin resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

28.     Plaintiff Jennifer Chase is an Iowa resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

29.     Plaintiff Rita Cornish is a Utah resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

30.     Plaintiff Nathan Croom is a Nebraska resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

31.     Plaintiff Lori Curtis is a Missouri resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

32.     Plaintiff Jessica DeCastro is a Missouri resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

33.     Plaintiff Theresia Dillard is a Mississippi resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

34.     Plaintiff Alena Farrell is a Vermont resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

35.     Plaintiff Jane Fitzgerald is a Vermont resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

36.     Plaintiff Carroll Gibbs is a District of Columbia resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

37.     Plaintiff Dori Gilels is a Montana resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

38.     Plaintiff Jason Grala is a New York resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

39.     Plaintiff Ian Groves is a New Mexico resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

40.     Plaintiff Curtis Gunnerson is a Minnesota resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

41.     Plaintiff Tom Halverson is an Arizona resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

42.     Plaintiff Curtis Harr is a North Dakota resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

43.     Plaintiff Andrew Hedlund is a South Carolina resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

9

44.     Plaintiff Gary Arthur Herr is a Florida resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

45.     Plaintiff John Hollingsworth is a California resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

46.     Plaintiff Elizabeth Kaufman is a Florida resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

47.     Plaintiff Robert Klingler is a Missouri resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

48.     Plaintiff Bonnie Vander Meulen is a Wisconsin resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

49.     Plaintiff Rebecca Lynn Morrow is an Arizona resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

50.     Plaintiff Edward Muscara is a New Hampshire resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

51.     Plaintiff Stacey Nickell is a West Virginia resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

52.     Plaintiff Roger Olson is a Michigan resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

53.     Plaintiff James Phelps is a Maine resident who purchased at least one side Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

54.     Plaintiff William Picotte is a former South Dakota resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

55.     Plaintiff Whitney Porter is a District of Columbia resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

56.     Plaintiff Cindy Prince is a Hawaii resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators. while a resident of Langlois, Oregon.

57.     Plaintiff Frances Gammell-Roach is a Rhode Island resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

58.     Plaintiff Darrel Senior is a Kansas resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

59.     Plaintiff Darcy Sherman is a Minnesota resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

60.     Plaintiff Erica Shoaf is an Arizona resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

61.     Plaintiff Arthur Stukey is a Vermont resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

62.     Plaintiff Kathleen Tawney is a North Carolina resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

63.     Plaintiff Jane Taylor is a Hawaii resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

64.     Plaintiff Keith Uehara is a Hawaii resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

65.     Plaintiff Michael Wick is a New Mexico resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

66.     Plaintiff Phillip Young is a Tennessee resident who purchased at least one Side-Door Latch and/or Latch Minimodule indirectly from Defendants or their co-conspirators.

**Defendants**

67.     When Plaintiffs refer to a corporate family or companies by a single name in the Complaint, they are alleging that one or more employees or agents of entities within that corporate family engaged in conspiratorial acts on behalf of every company in that family. The individual participants in the conspiratorial acts did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family. The individual participants entered into agreements on behalf of their respective corporate families. As a result, those agents represented the entire corporate family with respect to such conduct, and the corporate family was party to the agreements that those agents reached.

68.     Defendant Kiekert AG is a German corporation organized and existing under the laws of Germany with its principal place of business in Heiligenhaus, Germany. During the Class Period, Defendant Kiekert AG – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Side-Door Latches and Latch Minimodules that were sold and purchased throughout the United States, including in this District.

69.     Defendant Kiekert U.S.A., Inc. is a Delaware corporation with its principal place of business at 46941 Liberty Drive, Wixom, Michigan 48393. On information and belief, Kiekert U.S.A., Inc.  is a subsidiary and wholly owned and/or controlled by its parent, Kiekert AG. On information and belief, Defendant Kiekert U.S.A., Inc. manufactured, marketed and/or sold Side-Door Latches and Latch Minimodules that were sold and purchased throughout the United States, including in this District, during the Class Period. On information and belief, at all times during the Class Period, Defendant Kiekert U.S.A., Inc's  activities in the United States were under the control and direction of its German parent

## AGENTS AND CO-CONSPIRATORS

70.     Defendants acted as the principals of or agents for the unnamed co-conspirators with respect to the acts, violations, and common course of conduct alleged herein.

71.     Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

72.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

### A.    The Side-Door Latch Industry

73.    A "Side-Door Latch" secures the door to a vehicle body and may be locked to prevent unauthorized access to a vehicle from the exterior. A "Latch Minimodule" includes the Side-Door Latch and all of the related mechanical operating components, including the electric lock function. Some examples of Side-Door Latches and Latch Minimodules appear below:



http://www.kiekert.com/en/products/side-door-latches (accessed April 6, 2017). Side-Door Latches and Latch Minimodules are recognized by major companies in the automotive industry – including the Kiekert Defendants – as important to both the safety and the consumer satisfaction of an automobile:

> Door latches in automobiles bear a lot of responsibility. They protect property and reduce risks for passengers in case of an accident. However, acoustic characteristics when closing or activating the central locking system also form the overall impression of a vehicle. The first impression of a vehicle is often related to the acoustics and tactile feel when opening and closing the doors. Whichever auto manufacturer leaves a good first impression with these acoustics and the tactile feel has the power to win many bonus points with auto buyers right off the bat.

*Id.*

74.    Side-Door Latches and Latch Minimodules are considered "safety-critical systems" due to federal and original equipment manufacturer ("OEM") regulations. *See* Udriste, D. and Negrus, E., "Construction and Kinematics of Automotive Side Door Latch Mechanisms,"

SAE Technical Paper 2005-01-0881 (2005), available at http://papers.sae.org/2005-01-0881/ (accessed April 13, 2017).

75. Side-Door Latches and Latch Minimodules are installed by OEMs in Vehicles as part of the automotive manufacturing process.

76. For Vehicles, the OEMs – mostly large automotive manufacturers such as Ford, Toyota Motor Corporation, General Motors Company, etc. – purchase Side-Door Latches and Latch Minimodules directly from Defendants and/or their co-conspirators. Side-Door Latches and Latch Minimodules may also be purchased by component manufacturers who then supply such systems to OEMs. These component manufacturers are also called "Tier 1 Manufacturers" in the industry. Tier 1 Manufacturers supply Side-Door Latches and Latch Minimodules directly to an OEM.

77. When purchasing Side-Door Latches and Latch Minimodules, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers on a model-by-model basis for model specific parts. Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs, and the OEMs usually award the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years. Typically, the bidding process for a particular model begins approximately three years prior to the start of production, and Side-Door Latches and Latch Minimodules are developed over a year in advance of a Vehicle entering the market. OEMs procure Side-Door Latches and Latch Minimodules and other parts for U.S.-manufactured Vehicles in the United States and elsewhere.

78. Defendants and their co-conspirators supplied Side-Door Latches and Latch Minimodules to OEMs for installation in Vehicles manufactured and sold in the United States and elsewhere.

79.     According to the criminal Information filed against Kiekert AG, Kiekert AG and its co-conspirators: (a) manufactured and sold Side-Door Latches and Latch Minimodules in the United States for installation in Vehicles manufactured and sold in the United States; (b) in Mexico for export to the United States for installation in Vehicles manufactured and sold in the United States.

80.     Plaintiffs and members of the proposed Classes purchased Side-Door Latches and Latch Minimodules indirectly from one or more of Defendants   and their co-conspirators. By way of example, an owner of a Vehicle may indirectly purchase one or more Side-Door Latch(es) and/or Latch Minimodule(s) from Defendants or their co-conspirators as part of purchasing or leasing a new Vehicle.

> **(a)     The Structure and Characteristics of the Side-Door Latches and Latch Minimodules Market Render the Conspiracy More Plausible.**

81.     The Side-Door Latches and Latch Minimodules market in the United States is conducive to a price-fixing agreement because of its structure and other characteristics, which have made collusion particularly attractive in this market. Specifically, the Side-Door Latches and Latch Minimodules market: (1) has high barriers to entry and (2) has inelasticity of demand.

> **(i)     The Side-Door Latches and Latch Minimodules Market Has High Barriers to Entry.**

82.     A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely to enter the market. Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

83.     There are substantial barriers that preclude, reduce, or make more difficult entry into the Side-Door Latches and Latch Minimodules market. A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

> **(ii)     There is Inelasticity of Demand for Side-Door Latches and Latch Minimodules.**

84.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

85.     For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues, and profits, as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

86.     Demand for Side-Door Latches and Latch Minimodules is highly inelastic because there are no close substitutes for these products. In addition, customers must purchase Side-Door Latches and Latch Minimodules as an essential part of a Vehicle, even if the prices are kept at a supra-competitive level.

**B.     Government Investigations**

87.     A globally coordinated antitrust investigation is taking place in the United States, Europe, Canada, and Japan, aimed at suppliers of automotive parts in general and Side-Door

Latches and Latch Minimodules in particular. A Japan Fair Trade Commission ("JFTC") official told a leading legal publication that the international automotive parts supplier investigation would continue to widen because the automotive industry as a whole comprises many sub-industries. He characterized the investigations being conducted by international antitrust authorities as "large and broad," and he declined to deny that this "would be history's largest case."

88.     The antitrust probe originated in Europe as the result of several European OEMs coming together to bring a complaint to the European Commission ("EC"). The EC and the FBI have executed surprise raids at the European and U.S. offices of several automotive parts manufacturers as part of an investigation into anticompetitive conduct related to the manufacturing and sale of automotive parts.

89.     On February 8, 2010, the EC executed surprise raids at the European offices of certain automotive parts makers. The DOJ has confirmed that its automotive parts investigation is the largest criminal investigation that the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the illegal conduct. To date, as a result of its wide spread investigation, the DOJ has charged more than 100 individuals and companies with criminal antitrust violations and the DOJ has levied, to date, more than $2.9 billion in criminal fines against various automotive parts manufacturers.

## C.     Likely Existence of a Cooperating Defendant

90.     The Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") provides leniency benefits for a participant in a price-fixing conspiracy that voluntarily discloses its conduct to the DOJ. In most recent cases in which guilty pleas for price-fixing conduct have been obtained, there has been a cooperating party that has been accepted into the DOJ's ACPERA program as an "amnesty applicant." One of the leniency benefits for a conspirator that

is accepted into the ACPERA program is that it is not charged with a criminal offense and is not required to plead guilty to criminal charges.

91.     In light of the guilty plea in this case, multiple guilty pleas in related automotive parts antitrust cases and the DOJ's ongoing investigation into the industry, it is reasonable for this Court to infer that there is an ACPERA "amnesty applicant" in this case.

### D.     Additional Criminal Pleadings in the Automotive Parts Industry

92.     On September 29, 2011, the DOJ announced that Furukawa Electric Co. Ltd. agreed to plead guilty and pay a $200 million criminal fine for its role in a criminal price-fixing and bid-rigging conspiracy involving the sale of automotive wire harnesses and related products to automobile manufacturers.

93.     In the press release announcing the fine against Furukawa Electric Co. Ltd., Sharis A. Pozen, then the Acting Assistant Attorney General in charge of the DOJ's Antitrust Division, said that "[a]s a result of this international price-fixing and bid-rigging conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers." Ms. Pozen also stated that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped." The press release also quoted FBI's Special Agent in Charge Andrew G. Arena, who said that "[w]hen companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," and that "[t]he FBI is committed to aggressively pursuing any company involved in antitrust crimes."

94.     On January 30, 2012, the DOJ announced that Yazaki Corporation agreed to plead guilty and pay a $470 million criminal fine and DENSO Corporation agreed to plead guilty and pay a $78 million criminal fine for their respective involvement in multiple price-fixing and

bid-rigging conspiracies in the sale of automotive parts to automobile manufacturers in the United States. According to the three-count criminal Information filed against Yazaki, it engaged in three separate conspiracies: (i) to rig bids for and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to certain automobile manufacturers in the United States and elsewhere; (ii) to rig bids for and to fix, stabilize, and maintain the prices of, instrument panel clusters ("IPCs") sold to certain automobile manufacturers in the United States and elsewhere; and (iii) to fix, stabilize, and maintain the prices of fuel senders sold to an automobile manufacturer in the United States and elsewhere. According to the two-count felony charge against DENSO Corporation, it engaged in conspiracies to rig bids for, and to fix, stabilize, and maintain the prices of, electronic control units ("ECUs") and heater control panels ("HCPs") sold to an automobile manufacturer in the United States and elsewhere.

95.     In the press release announcing the fines against Yazaki Corporation, its executives, and DENSO Corporation, Ms. Pozen vowed to continue the investigation into "pernicious cartel conduct that results in higher prices to American consumers . . . ." In the same press release, Special Agent in Charge Andrew G. Arena said that "[t]his criminal activity has as significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring for at least a decade. The conduct has also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold[.]"

96.     Ms. Pozen said there is no doubt **consumers** were hurt financially by the automotive wire harness price-fixing conspiracy. She stated: "By rigging bids on wiring harnesses . . . the three companies inflated what some of their auto manufacturer clients paid, and indirectly, what consumers paid for some cars."

97.    On April 3, 2012, the DOJ announced that G.S. Electech Inc. agreed to plead guilty and pay a $2.75 million criminal fine for its role in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, speed sensor wire assemblies used on antilock brake systems sold to an automobile manufacturer in the United States and elsewhere.

98.    On April 23, 2012, the DOJ announced that Fujikura Ltd. agreed to plead guilty and pay a $20 million criminal fine for its role in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to an automobile manufacturer in the United States and elsewhere.

99.    On June 6, 2012, the DOJ announced that Autoliv Inc. agreed to plead guilty to a two-count criminal Information and pay a $14.5 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by (i) agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain seatbelts sold to a Japanese automobile manufacturer; and (ii) agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain seatbelts, airbags, and/or steering wheels sold to a Japanese automobile manufacturer.

100.    On July 30, 2012, the DOJ announced that TRW Deutschland Holding GmbH agreed to plead guilty and pay a $5.1 million criminal fine for its involvement in a combination and conspiracy, through its employees, including high level employees of its wholly-owned subsidiaries, to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts, airbags and steering wheels sold to two German automobile manufacturers in the United States and elsewhere.

101.    On August 28, 2012, the DOJ announced that Nippon Seiki Co. Ltd. agreed to plead guilty and pay a $1 million criminal fine for its involvement in a combination and

conspiracy to suppress competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, IPCs sold to an automobile manufacturer in the United States and elsewhere.

102.    On October 30, 2012, the DOJ announced that Tokai Rika Co. Ltd. agreed to plead guilty and pay a $17.7 million criminal fine for its involvement in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, HCPs sold to Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America, Inc. in the United States and elsewhere. Tokai Rika also agreed to plead guilty to a charge of obstruction of justice related to the investigation of the antitrust violation.

103.    On February 15, 2013, Scott Hammond, the Deputy Assistant Attorney General in the Antitrust Division, discussed the DOJ's ongoing automotive parts investigation in a Thomson Reuters article. He said "[t]he investigation is broader than what we've announced so far . . . . [The investigation] is still very much ongoing, but it already appears to be the biggest criminal antitrust investigation that we've ever encountered. *I say the biggest with respect to the __impact__ on U.S. businesses and __consumers__, and the number of companies and executives that are subject to the investigation.*" (emphasis added).

104.    On July 16, 2013, the DOJ announced that Diamond Electric Mfg. Co. Ltd. agreed to plead guilty and pay a $19 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, ignition coils sold to automobile manufacturers in the United States and elsewhere.

105.    In the press release announcing the fine against Diamond Electric Mfg. Co. Ltd., Robert D. Foley III, Agent in Charge, FBI Detroit Division said "[t]hose who engage in price

fixing, bid rigging and other fraudulent schemes harm the automotive industry by driving up costs for vehicle makers and buyers."

106.    On July 18, 2013, Panasonic Corporation agreed to plead guilty and pay a $45.8 million criminal fine for its role in a conspiracy to fix prices of various automotive parts including high intensity discharge ("HID") ballasts, switches and steering angle sensors installed in automobiles sold in the United States and elsewhere.

107.    On September 26, 2013, nine additional Japanese automotive suppliers agreed to plead guilty to conspiracy charges and pay more than $740 million in criminal fines for their roles in rigging the prices of more than 30 different products:

(a)    Hitachi Automotive Systems Ltd. agreed to plead guilty and pay a $195 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of automotive parts, including, among others, air flow meters, fuel injection systems, electronic throttle bodies, and inverters, sold to automobile manufacturers in the United States and elsewhere;

(b)    Mitsuba Corporation agreed to plead guilty and pay a $135 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of certain automotive parts sold to automobile manufacturers in the United States and elsewhere. Mitsuba Corporation's plea agreement defined "automotive parts" to include windshield wiper systems, windshield washer systems, starter motors, power window motors, fan motors, radiator fans, door mirrors, lamps, power seat motors, sunroof, door and tailgate motors, electric power steering motors, electronic throttle motors, horns, automotive electric relays and switches, automotive electric actuators, AC

generations, and fuel pumps. Mitsuba also agreed to plead guilty to one count of obstruction of justice because of the company's efforts to destroy evidence ordered by a high-level U.S.-based executive after learning of the U.S. investigation of collusion in the automotive parts industry;

(c)     Mitsubishi Electric Corporation agreed to plead guilty and pay a $190 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of certain automotive parts sold to automobile manufacturers in the United States and elsewhere. For purposes of Mitsubishi Electric Corporation's plea agreement, "automotive parts" are defined to include, AC generators, air bag sensors, electronic control units, exhaust gas recirculation valves, fuel injectors, fuel pumps, HID ballasts, ignition coils, integrated units, keyless entry systems, MAP sensors, purge control valves, starter motors, throttle bodies, variable cam timing, and variable valve timing;

(d)     Mitsubishi Heavy Industries Ltd. agreed to plead guilty and pay a $14.5 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of compressors and condensers sold to automobile manufacturers in the United States and elsewhere;

(e)     T.RAD Co. Ltd. agreed to plead guilty and pay a $13.75 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of radiators and automatic transmission fluid warmers ("ATF warmers") sold to automobile manufacturers in the United States and elsewhere;

(f)     Valeo Japan Co. Ltd. agreed to plead guilty and pay a $13.6 million criminal fine for its participation in a conspiracy to allocate the supply of, rig bids

for, and to fix, stabilize and maintain the prices of air conditioning systems sold to automobile manufacturers in the United States and elsewhere;

(g)     JTEKT Corporation agreed to plead guilty and pay a $103.27 million criminal fine for its participation in a conspiracy to allocate markets, to rig bids for, and to fix, stabilize and maintain the prices of bearings and electric powered steering assemblies sold to automobile manufacturers in the United States and elsewhere;

(h)     NSK Ltd. agreed to plead guilty and pay a $68.2 million criminal fine for its participation in a conspiracy to allocate markets, to rig bids for, and to fix, stabilize and maintain the prices of bearings sold to an automobile manufacturer in the United States and elsewhere; and

(i)     Yamashita Rubber Co. Ltd. agreed to plead guilty and to pay an $11 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, raise and maintain the prices of automotive anti-vibration rubber products sold in the United States and elsewhere to automobile manufacturers.

108.     On the same day, September 26, 2013, then United States Attorney General Eric Holder presented the DOJ's most recent findings in the ongoing automotive parts investigation. He stated "[t]hese international price-fixing conspiracies affected more than $5 billion in automobile parts sold to U.S. car manufacturers. In total, more than 25 million cars purchased by American consumers were affected by the illegal conduct." Then Attorney General Holder also described how the conspiracies worked: "[c]ompany executives met face to face in the United States and Japan – and talked on the phone – to reach collusive agreements to rig bids, fix prices and allocate the supply of auto parts sold to U.S. car companies. In order to keep their illegal

conduct secret, they used code names and met in remote locations. Then they followed up with each other regularly to make sure the collusive agreements were being adhered to." Then Attorney General Holder explained that the automotive parts conspiracies "targeted U.S. manufacturing, U.S. businesses and U.S. consumers. As a result of these conspiracies, Americans paid more for their cars."

109.    The diagram below, which was prepared by the DOJ, illustrates the September 26, 2013 guilty pleas and the corresponding automotive parts to which the various manufacturers have admitted price-fixing.



110.    On October 9, 2013, Takata Corporation announced that it agreed to pay $71.3 million to settle antitrust charges brought by the United States federal prosecutors for its role in a conspiracy to price-fix seatbelts.

111.    On November 26, 2013, the DOJ announced that Toyo Tire & Rubber Co. Ltd. agreed to plead guilty and pay a $120 million criminal fine for its role in two separate conspiracies. Toyo Tire & Rubber Co. Ltd. engaged in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, raise, and maintain the prices of, automotive anti-vibration rubber products sold to Toyota Motor Corporation, Nissan Motor Corporation, Fuji Heavy Industries, Ltd., and certain of their subsidiaries, affiliates and suppliers in the United States and elsewhere, and by agreeing to allocate sales of, and to fix, raise, and maintain the prices of, automotive constant-velocity-joint boot products sold to GKN plc and its subsidiaries in the United States and elsewhere.

112.    On November 27, 2013, the DOJ announced that Stanley Electric Co. Ltd. agreed to plead guilty and pay a $1.44 million criminal fine for its participation in a conspiracy to fix prices of automotive HID lamp ballasts installed in automobiles sold in the United States and elsewhere.

113.    On January 16, 2014, the DOJ announced that Koito Manufacturing Co. Ltd. agreed to plead guilty and pay a $56.6 million criminal fine for its roles in separate price-fixing conspiracies involving automobile lighting fixtures and automotive HID lamp ballasts installed in cars sold in the United States and elsewhere.

114.    On February 3, 2014, the DOJ announced that Aisan Industry Co. Ltd. agreed to plead guilty and pay a $6.86 million criminal fine for its role in a price-fixing conspiracy

involving electronic throttle bodies sold to an automobile manufacturer in the United States and elsewhere.

115.    On February 13, 2014, the DOJ announced that Bridgestone Corp. agreed to plead guilty and pay a $425 million criminal fine for its role in a conspiracy to fix prices of automotive anti-vibration rubber parts installed in automobiles sold in the United States and elsewhere.

116.    On April 23, 2014, the DOJ announced that Showa Corp. agreed to plead guilty and pay a $19.9 million criminal fine for its role in a conspiracy to fix prices and rig bids for pinion-assist type electric powered steering assemblies installed in cars sold in the United States and elsewhere.

117.    On August 19, 2014, the DOJ announced that NGK Sparkplug Co. Ltd. agreed to plead guilty and pay a $52.1 million criminal fine for its role in a conspiracy to fix prices and rig bids for spark plugs, standard oxygen sensors, and air fuel ratio sensors installed in cars sold to automobile manufacturers in the United States and elsewhere.

118.    On September 29, 2014, the DOJ announced that Toyoda Gosei Co. Ltd. agreed to plead guilty and to pay a $26 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of certain automotive hoses sold to Toyota in the United States and by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of, automotive airbags and steering wheels sold to Subaru and Toyota in the United States and elsewhere.

119.    On October 31, 2014, the DOJ announced that Hitachi Metals Ltd. agreed to plead guilty and pay a $1.25 million criminal fine for its role in a conspiracy to suppress competition in the automotive parts industry by agreeing to allocate sales of, rig bids for, and to fix, raise, and

maintain the prices of automotive brake hoses installed in automobiles sold in the United States and elsewhere.

120.    On November 13, 2014, the DOJ announced that Aisin Seiki Co. Ltd. agreed to plead guilty and pay a $35.8 million criminal fine for its role in a conspiracy to allocate customers of variable valve timing devices installed in cars sold to automobile manufacturers in the United States and elsewhere.

121.    On November 24, 2014, the DOJ announced that Continental Automotive Electronics LLC and Continental Automotive Korea Ltd. agreed to plead guilty and pay a criminal fine of $4 million for their roles in a conspiracy to rig bids of IPCs installed in vehicles manufactured and sold in the United States.

122.    On January 27, 2015, the DOJ announced that Sanden Corp. agreed to plead guilty and pay a $3.2 million criminal fine for its participation in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to fix, stabilize, and maintain the prices of compressors sold to Nissan in the United States and elsewhere.

123.    On March 31, 2015, the DOJ announced that Robert Bosch GmbH agreed to plead guilty and to pay a $57.8 million criminal fine for its role in a conspiracy to fix prices and rig bids for spark plugs, oxygen sensors and starter motors sold to automobile and internal combustion engine manufacturers in the United States and elsewhere.

124.    On April 28, 2015, the DOJ announced that Yamada Manufacturing Co., Ltd. agreed to plead guilty and to pay a $2.5 million criminal fine for its role in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of steering columns sold to certain subsidiaries of Honda Motor Co., Ltd., in the United States and elsewhere, from at least as early

as the fall of 2007 and continuing until as late as September 2012, in violation of the Sherman Act, 15 U.S.C. § 1.

125.    On September 3, 2015, the DOJ announced that NGK Insulators Ltd. agreed to plead guilty and to pay a $65.3 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of ceramic substrates for automotive catalytic converters supplied to automobile manufacturers in the United States and elsewhere. The company also agreed to plead guilty to obstruction of justice for altering, destroying or concealing documents with the intent to impede the criminal antitrust investigation.

126.    On September 16, 2015, the DOJ announced that Kayaba Industries Co. Ltd. d/b/a KYB Corporation agreed to plead guilty and to pay a $62 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate markets, rig bids for, and to fix, stabilize, and maintain the prices of shock absorbers sold to certain automobile and motorcycle manufacturers in the United States and elsewhere.

127.    On November 19, 2015, the DOJ announced that INOAC Corp. agreed to plead guilty and to pay a $2.35 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of certain plastic interior trim automotive parts sold to Toyota in the United States and elsewhere.

128.    On March 17, 2016, the DOJ announced that Omron Automotive Electronics Co., Ltd. agreed to plead guilty and to pay a $4.55 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales

of, to rig bids for, and to fix, stabilize, and maintain the prices of power window switches sold to Honda in the United States and elsewhere.

129.     On May 16, 2016, the DOJ announced that Corning International K.K. agreed to plead guilty and to pay a $66.5 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of ceramic substrates sold to automobile manufacturers in the United States and elsewhere.

130.     On June 15, 2016, the DOJ announced that a federal grand jury, sitting in the U.S. District Court for the Southern District of Ohio, returned two indictments charging Japanese automotive parts companies, their U.S. subsidiaries, and a total of five executives with criminal antitrust violations for their participation in international conspiracies to eliminate competition in the sale of automotive parts in the United States. One of the indictments charges Tokai Kogyo Co. Ltd., its wholly-owned U.S. subsidiary, Green Tokai Co. Ltd., and its former executive Akitada Tazumi with conspiring to rig bids for and fix the prices of automotive body sealing products sold to an automobile manufacturer for installation in vehicles sold in the United States and elsewhere. The other indictment charges Defendant Maruyasu Industries Co. Ltd., its wholly-owned U.S. subsidiary, Defendant Curtis-Maruyasu America Inc., and their executives, Tadao Hirade, Satoru Murai, Kazunori Kobayashi and Yoshihiro Shigematsu, with conspiring to fix prices, allocate customers, and rig bids for steel tubes sold to automobile manufacturers for installation in vehicles sold in the United States and elsewhere.

131.     On July 20, 2016, the DOJ announced that Nishikawa Rubber Co. Ltd. agreed to plead guilty and pay a $130 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids

for, and to fix, stabilize, and maintain the prices of automotive body sealing products sold to automobile manufacturers in the United States and elsewhere.

132.     On August 9, 2016, the DOJ announced that Hitachi Automotive Systems Ltd. agreed to plead guilty and pay a $55.48 million fine for its role in a conspiracy to allocate markets, fix prices and rig bids for shock absorbers sold to vehicle manufacturers in the United States and elsewhere from the mid-1990s until the summer of 2011. According to the press release, although Hitachi Automotive Systems Ltd. previously agreed to plead guilty to price-fixing and bid-rigging various automotive parts, it failed to uncover and disclose that it had also conspired to fix the prices of shock absorbers.

133.     On September 15, 2016, the DOJ announced that Alpha Corporation agreed to plead guilty and to pay a $9 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of automotive access mechanisms sold to automobile manufacturers in the United States and elsewhere.

134.     On November 8, 2016, the DOJ announced that Usui Kokusai Sangyo Kaisha Ltd. agreed to plead guilty and pay a $7.2 million criminal fine for its role in a conspiracy to fix prices, allocate customers and rid bids of automotive steel tubes sold to automobile manufacturers in the United States and elsewhere.

135.     On March 7, 2017, the DOJ announced that Kiekert AG agreed to plead guilty and to pay a $6.1 million criminal fine for its role in the conspiracy alleged herein.

136.     To date, 48 companies and 65 executives have been charged in the Antitrust Division's ongoing investigation into price-fixing and bid-rigging in the automotive parts

industry. Of the 48 companies charged, 44 have either pleaded guilty or agreed to plead guilty and altogether, they have agreed to pay a total of more than $2.9 billion in criminal fines.

137.    As stated by the FBI's Special Agent in Charge, Andrew G. Arena in a January 30, 2012 press release, "[t]his criminal activity has a significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring at least a decade. The conduct had also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold." As Mr. Arena previously said in a September 29, 2011 press release, "[w]hen companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system. The FBI is committed to aggressively pursuing any company involved in antitrust crimes."

## CLASS ACTION ALLEGATIONS

138.    Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities who, during the Class Period, purchased or leased a new Vehicle in the United States not for resale which included one or more Side-Door Latch(es) and/or Latch Minimodule(s) as a component part, which were manufactured or sold by the Kiekert Defendants, any current or former subsidiary of the Kiekert Defendants, or any co-conspirator of the Kiekert Defendants.

139.    Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following class (the "Damages Class"):

> All persons and entities who, during the Class Period, purchased or leased a new Vehicle in the Indirect Purchaser States[1] not for resale which included one or more Side-Door Latch(es) and/or Latch Minimodule(s) as a component part, which were manufactured or sold by the Kiekert Defendants, any current or former subsidiary of the Kiekert Defendants, or any co-conspirator of the Kiekert Defendants.

140.    The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are the Kiekert Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Side-Door Latches and Latch Minimodules directly or for resale.

141.    While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each Class.

142.    Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of the Kiekert Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

> (a)    Whether the Kiekert Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Side-Door Latches and Latch Minimodules installed in Vehicles sold in the United States;

---

[1] The Indirect Purchaser States are the states listed in the Second and Third Claims for Relief.

34

(b)   The identity of the participants of the alleged conspiracy;

(c)   The duration of the alleged conspiracy and the acts carried out by the Kiekert Defendants and their  co-conspirators in furtherance of the conspiracy;

(d)   Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)   Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws, as alleged in the Second and Third Claims for Relief;

(f)   Whether the Kiekert Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Damages Class, thereby entitling Plaintiffs and the members of the Damages Class to disgorgement of all benefits derived by the Kiekert Defendants, as alleged in the Fourth Claim for Relief;

(g)   Whether the conduct of the Kiekert Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)   The effect of the alleged conspiracy on the prices of Side-Door Latches and Latch Minimodules installed in Vehicles sold in the United States during the Class Period;

(i)   Whether Plaintiffs and members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

(j)   Whether the Kiekert Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members of the Classes;

(k)   The appropriate injunctive and related equitable relief for the Nationwide Class; and

(l)   The appropriate class-wide measure of damages for the Damages Class.

143.   Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by the Kiekert Defendants' wrongful conduct in that they paid artificially inflated prices for Side-Door Latches and Latch Minimodules purchased indirectly from the Kiekert Defendants and/or their co-conspirators.

144.   Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

145.   The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

146.   Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class

mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

147.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Kiekert Defendants.

## PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

148.  The Kiekert Defendants' price-fixing conspiracy had the following effects, among others:

(a)  Price competition has been restrained or eliminated with respect to Side-Door Latches and Latch Minimodules;

(b)  The prices of Side-Door Latches and Latch Minimodules have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)  Indirect purchasers of Side-Door Latches and Latch Minimodules have been deprived of free and open competition; and

(d)  Indirect purchasers of Side-Door Latches and Latch Minimodules paid artificially inflated prices.

149.  During the Class Period, Plaintiffs and the members of the Classes paid supra-competitive prices for Side-Door Latches and Latch Minimodules. OEMS and automobile dealers passed on inflated prices to Plaintiffs and the members of the Classes. Those overcharges have unjustly enriched the Kiekert Defendants.

150.  The markets for Side-Door Latches and Latch Minimodules and Vehicles are inextricably linked and intertwined because the market for Side-Door Latches and Latch Minimodules exists to serve the Vehicles market. Without the Vehicles, the Side-Door Latches

and Latch Minimodules have little to no value because they have no independent utility. Indeed, the demand for Vehicles creates the demand for Side-Door Latches and Latch Minimodules. As stated in the 2010 Annual Report of Lear Corporation, an automotive parts supplier: "Our sales are driven by the number of vehicles produced by the automotive manufacturers, which is ultimately dependent on consumer and fleet demand for automotive vehicles."

151.    Side-Door Latches and Latch Minimodules are identifiable, discrete physical products that remain essentially unchanged when incorporated into a Vehicle. As a result, Side-Door Latches and Latch Minimodules follow a traceable physical chain of distribution from the Kiekert Defendants to Plaintiffs and the members of the Classes, and any cost changes attributable to Side-Door Latches and Latch Minimodules can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

152.    Just as Side-Door Latches and Latch Minimodules can be physically traced through the supply chain, so can their prices be traced to show that changes in the prices paid by direct purchasers of Side-Door Latches and Latch Minimodules affect prices paid by indirect purchasers of Vehicles containing Side-Door Latches and Latch Minimodules.

153.    While even a monopolist would increase its prices when the cost of its inputs increased, the economic necessity of passing through cost changes increases with the degree of competition a firm faces. The OEM and dealer markets for Vehicles are subject to vigorous price competition. The OEMs and Vehicle dealers have thin net margins, and are therefore at the mercy of their component costs, such that increases in the price of components such as Side-Door Latches and Latch Minimodules lead to corresponding increases in prices for Vehicles at the OEM and dealer levels. When downstream distribution markets are highly competitive, as they are in the case of Vehicles containing Side-Door Latches and Latch Minimodules as

components, overcharges are passed through to ultimate consumers, such as the indirect-purchaser Plaintiffs and members of the Classes.

154.    Hence the inflated prices of Side-Door Latches and Latch Minimodules in Vehicles resulting from the Kiekert Defendants' bid-rigging and price-fixing conspiracy have been passed on to Plaintiffs and the other members of the Classes by OEMs and dealers.

155.    The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products containing that price-fixed component. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."[2]

156.    As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of the indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers…Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets. This general phenomenon of cost

---

[2]  Robert G. Harris & Lawrence A. Sullivan, *Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis*, 128 U. PA. L. REV. 268, 275 (1979).

pass through is well established in antitrust laws and economics as
well.[3]

157.    The purpose of the conspiratorial conduct of the Kiekert Defendants and their co-
conspirators was to raise, fix, rig or stabilize the price of Side-Door Latches and Latch
Minimodules and, as a direct and foreseeable result, the price of Vehicles containing Side-Door
Latches and Latch Minimodules. Economists have developed techniques to isolate and
understand the relationship between one "explanatory" variable and a "dependent" variable in
those cases when changes in the dependent variable are explained by changes in a multitude of
variables, even when all such variables may be changing simultaneously. That analysis – called
regression analysis – is commonly used in the real world and in litigation to determine the impact
of a price increase on one cost in a product (or service) that is an assemblage of costs. Thus, it is
possible to isolate and identify only the impact of an increase in the price of Side-Door Latches
and Latch Minimodules on prices for Vehicles even though such products contain a number of
other components whose prices may be changing over time. A regression model can explain how
variation in the price of Side-Door Latches and Latch Minimodules affects changes in the price
of Vehicles. In such models, the price of Side-Door Latches and Latch Minimodules would be
treated as an independent or explanatory variable. The model can isolate how changes in the
price of Side-Door Latches and Latch Minimodules impact the price of Vehicles containing Side-
Door Latches and Latch Minimodules while controlling for the impact of other price-determining
factors.

_____

[3] Order re: Class Certification at 13-14, *Coordination Proceedings Special Title (Rule 1550(b))*
*Microsoft I-V Cases*, No. J.C.C.P. No. 4106, (Cal. Sup. Ct. Aug. 29, 2000).

158.    The precise amount of the overcharge impacting the prices of Vehicles containing Side-Door Latches and Latch Minimodules can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiffs and members of the Classes can be quantified.

159.    In addition to the regression analysis discussed above demonstrating impact on consumers, the DOJ's Antitrust Division, which has been investigating anticompetitive conduct in the automotive parts industry for some time, **has concluded that there is "no doubt" that consumers were hurt financially**. Sharis A. Pozen, then Acting Assistant Attorney General in charge of the DOJ's Antitrust Division said: "By rigging bids . . . [automotive parts manufacturers engaged in a price-fixing conspiracy] inflated what some of their auto manufacturing clients paid, and indirectly, what consumers paid for some cars." She also explained that "[a]s a result of this international price-fixing and bid-rigging conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers." Ms. Pozen also stated that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped." In a separate press statement, Ms. Pozen vowed to continue the investigation into "pernicious cartel conduct that results in higher prices to American consumers . . . ."

160.    On February 15, 2013, Scott Hammond, the Deputy Assistant Attorney General in the DOJ's Antitrust Division, discussed the DOJ's ongoing automotive parts investigation in a Thomson Reuters article. He said "[t]he investigation is broader than what we've announced so far . . . . [The investigation] is still very much ongoing, but it already appears to be the biggest

criminal antitrust investigation that we've ever encountered*. **I say biggest with respect to the <u>impact</u> on U.S. businesses and <u>consumers</u>, and the number of companies and executives that are subject to the investigation**.*" (emphasis added).

161.    On September 26, 2013, then United States Attorney General Eric Holder in the Antitrust Division presented the DOJ's then most recent findings in the ongoing automotive parts investigation. He stated "[t]hese international price-fixing conspiracies affected more than $5 billion in automobile parts sold to U.S. car manufacturers. In total, more than 25 million cars purchased by American consumers were affected by the illegal conduct." Then Attorney General Holder also described how the conspiracies worked: "[c]ompany executives met face to face in the United States and Japan – and talked on the phone – to reach collusive agreements to rig bids, fix prices and allocate the supply of auto parts sold to U.S. car companies. In order to keep their illegal conduct secret, they used code names and met in remote locations. Then they followed up with each other regularly to make sure the collusive agreements were being adhered to." Then Attorney General Holder explained that the automotive parts conspiracies "targeted U.S. manufacturing, U.S. businesses and U.S. consumers. As a result of these conspiracies, Americans paid more for their cars."

162.    On May 25, 2014, news sources reported that Brent Snyder, a deputy assistant attorney general in the Antitrust Division, said with respect to the automotive parts conspiracies, "[i]t's a very, very safe assumption that U.S. consumers paid more, and sometimes significantly more, for their automobiles as a result of this conspiracy."

163.    By reason of the violations of the antitrust, consumer protection, and unjust enrichment laws alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Side-Door Latches and Latch

Minimodules than they would have paid in the absence of the Kiekert Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A.    The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not And Could Not Discover Their Claims,

164.    Plaintiffs repeat and re-allege the allegations set forth above. Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest) March 7, 2017, the date the DOJ publicly announced that Defendant Kiekert AG agreed to plead guilty to the conspiracy alleged herein.

165.    Plaintiffs and members of the Classes are consumers and businesses that purchased or leased new Vehicles containing Side-Door Latches and Latch Minimodules not for resale. They had no direct contact or interaction with the Kiekert Defendants and had no means from which they could have discovered the Side-Door Latches and Latch Minimodules combination and conspiracy described in this Complaint before March 7, 2017.

166.    No information in the public domain was available to Plaintiffs and members of the Classes concerning the combination or conspiracy alleged herein prior to March 7, 2017, the date the DOJ announced that Defendant Kiekert AG agreed to plead guilty to the criminal conspiracy alleged herein . Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of the Kiekert Defendants or their co-conspirators' dealings with OEMs or other direct purchasers, much less the fact that the Kiekert

Defendants and their co-conspirators had engaged in the combination and conspiracy alleged herein.

167.    For these reasons, the statute of limitations as to Plaintiffs' and the Classes' claims did not begin to run until, at the earliest, March 7, 2017.

B.      **Fraudulent Concealment Tolled the Statute of Limitations**

168.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until March 7, 2017, the date the DOJ announced that Defendant Kiekert AG agreed to plead guilty to the conspiracy alleged herein.

169.    Before that time, Plaintiffs and the members of the Classes were unaware of the Kiekert Defendants' unlawful conduct, and did not know before then that they were paying supra-competitive prices for Side-Door Latches and Latch Minimodules throughout the United States during the Class Period. No information, actual or constructive, was ever made available to Plaintiffs and members of the Classes that even hinted to Plaintiffs that they were being injured by the Kiekert Defendants' unlawful conduct.

170.    The affirmative acts of the Kiekert Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

171.    Specifically, as then Attorney General Holder explained in connection with the DOJ's globally coordinated investigation into price-fixing in the Automotive parts industry, "[i]n order to keep their illegal conduct secret, [Defendants] used code names and met in remote locations."

44

172.   By their very nature, the Kiekert Defendants' anticompetitive conspiracy and unlawful combinations were inherently self-concealing. Side-Door Latches and Latch Minimodules are not exempt from antitrust regulation and, thus, Plaintiffs and members of the Classes reasonably considered the Side-Door Latches and Latch Minimodules industry to be a competitive industry. According to the Criminal Information, Kiekert AG met and communicated in secret and agreed to keep the facts about its collusive conduct from being discovered by any member of the public or by the OEMs and other direct purchasers with whom they did business. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of the Kiekert Defendants' Side-Door Latch and Latch Minimodule prices before March 7, 2017, at the earliest.

173.   Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Kiekert Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

174.   According to the Criminal Information, throughout the course of the conspiracy, Kiekert AG met and communicated in secret to conceal the conspiracy from the public and avoid detection thereof. Above and beyond its acts in furtherance of the conspiracy, such as acts of bid rigging, Kiekert AG engaged in surreptitious activity such as using code names and meeting at private residences or remote locations. The conspirators also coordinated their pricing in a manner to avoid detection by the OEMs. The exact dates and times of these meetings are within the knowledge of Kiekert.

175.    Because the alleged conspiracy was self-concealing and affirmatively concealed by Kiekert and its co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until, at the earliest, March 7, 2017, the date the DOJ announced that it had filed its Criminal Information against Kiekert AG and that Kiekert AG agreed to plead guilty to conspiracy alleged herein.

176.    For these reasons, the statute of limitations applicable to Plaintiffs' and the Classes' claims was tolled and did not begin to run until March 7, 2017.

**FIRST CLAIM FOR RELIEF**
**Violation of Section 1 of the Sherman Act**
**(on behalf of Plaintiffs and the Nationwide Class)**

177.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

178.    The Kiekert Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

179.    The acts done by the Kiekert Defendants as part of, and in furtherance of, its and its co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

180.    During the Class Period, the Kiekert Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Side-Door Latches and Latch Minimodules, thereby creating anticompetitive effects.

181.    The anticompetitive acts were intentionally directed at the United States market for Side-Door Latches and Latch Minimodules and had a substantial and foreseeable effect on

interstate commerce by raising and fixing prices for Side-Door Latches and Latch Minimodules throughout the United States.

182.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for Side-Door Latches and Latch Minimodules.

183.    As a result of the Kiekert Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Side-Door Latches and Latch Minimodules have been harmed by being forced to pay inflated, supra-competitive prices for Side-Door Latches and Latch Minimodules.

184.    In formulating and carrying out the alleged agreement, understanding and conspiracy, the Kiekert Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

185.    The Kiekert Defendants and their co-conspirators' conspiracy had the following effects, among others:

> (a)  Price competition in the market for Side-Door Latches and Latch Minimodules has been restrained, suppressed, and/or eliminated in the United States;
>
> (b)  Prices for Side-Door Latches and Latch Minimodules sold by the Kiekert Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)   Plaintiffs and members of the Nationwide Class who purchased Side-Door Latches and Latch Minimodules indirectly from the Kiekert Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

186.   Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Side-Door Latches and Latch Minimodules purchased indirectly from the Kiekert Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

187.   The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

188.   Plaintiffs and members of the Nationwide Class are entitled to an injunction against the Kiekert Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiffs and the Damages Class)

189.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

190.   During the Class Period, the Kiekert Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Side-Door Latches and Latch Minimodules in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

191.   The contract, combination, or conspiracy consisted of an agreement among the Kiekert Defendants and its co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Side-Door Latches and Latch Minimodules and to allocate customers for Side-Door Latches and Latch Minimodules in the United States.

192.   In formulating and effectuating this conspiracy, the Kiekert Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a)     participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Side-Door Latches and Latch Minimodules at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Side-Door Latches and Latch Minimodules sold in the United States;

(b)     allocating customers and markets for Side-Door Latches and Latch Minimodules in the United States in furtherance of their agreements; and

(c)     participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

193.    The Kiekert Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate customers with respect to Side-Door Latches and Latch Minimodules.

194.    The Kiekert Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

195.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and

(4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct substantially affected Arizona commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

196.     The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)     During the Class Period, the Kiekert Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. The Kiekert Defendants have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Side-Door Latches and Latch Minimodules at supra-competitive levels.

(b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Kiekert Defendants and their  co-conspirators, the

substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Side-Door Latches and Latch Minimodules.

(c)    For the purpose of forming and effectuating the unlawful trust, the Kiekert Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of Side-Door Latches and Latch Minimodules; and (2) Allocating among themselves the production of Side-Door Latches and Latch Minimodules.

(d)    The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) Price competition in the sale of Side-Door Latches and Latch Minimodules has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Side-Door Latches and Latch Minimodules sold by the Kiekert Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased Side-Door Latches and Latch Minimodules directly or indirectly from the Kiekert Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(e)    As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Side-Door Latches and Latch Minimodules than they otherwise would have paid in the absence of the Kiekert

51

Defendants' unlawful conduct. As a result of the Kiekert Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

197.   The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek

all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq*.

198.   The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq*.

(a)    The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)    During the Class Period, the Kiekert Defendants' illegal conduct substantially affected Iowa commerce.

(c)    As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq*.

199.   The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*.

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct substantially affected Kansas commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

200.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*.

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Maine; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3)

54

Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

201.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq*.

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)      During the Class Period, the Kiekert Defendants' illegal conduct substantially affected Michigan commerce.

(c)      As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

202.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

(a)      The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)      During the Class Period, the Kiekert Defendants' illegal conduct substantially affected Minnesota commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

203.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct substantially affected Mississippi commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

204.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

205.   The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq*.

(a)   The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)   During the Class Period, the Kiekert Defendants' illegal conduct substantially affected Nevada commerce.

(c)   As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

206.   The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq*.

(a)   The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and

eliminated throughout New Hampshire; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)      During the Class Period, the Kiekert Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)      As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

207.   The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq*.

(a)      The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid

supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct substantially affected New Mexico commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

208.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout New York; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules when they purchased Vehicles containing Side-Door Latches and Latch Minimodules, or purchased products that were otherwise of lower quality than they would have been absent the Kiekert Defendants' and their co-

conspirators' illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct substantially affected New York commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*. The conduct set forth above is a *per se* violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

209.   The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct substantially affected North Carolina commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq.*

210.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq*.

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)      As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq*.

211.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq*.

(a)      The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)      During the Class Period, the Kiekert Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)      As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

212.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq*.

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

213.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq*.

(a)    The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)    During the Class Period, the Kiekert Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)    As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

214.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq*.

(a)    The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and

eliminated throughout Utah; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)    During the Class Period, the Kiekert Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)    As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, the Kiekert Defendants' have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq*.

215.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq*.

(a)    The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-

competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

216.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq*.

217.    The Kiekert Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01*, et seq*.

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Side-Door Latch prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, the Kiekert Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

218.     Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of the Kiekert Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid more for Side-Door Latches and Latch Minimodules than they otherwise would have paid in the absence of the Kiekert Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes the Kiekert Defendants' conduct unlawful.

219.     In addition, the Kiekert Defendants have profited significantly from the aforesaid conspiracy. The Kiekert Defendants' profits derived from its anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

220.     Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

### THIRD CLAIM FOR RELIEF
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

221.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

222.    The Kiekert Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

223.    The Kiekert Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq.*

(a)     The Kiekert Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Side-Door Latch and Latch Minimodule Products were sold, distributed, or obtained in Arkansas and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Kiekert Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)     The Kiekert Defendants' unlawful conduct had the following effects: (1) Side-Door Latch Products price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Side-Door Latch Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(d)     During the Class Period, the Kiekert Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Kiekert Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)     The Kiekert Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

224.    The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq*.

(a)     During the Class Period, the Kiekert Defendants marketed, sold, or distributed Side-Door Latches and Latch Minimodules in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from the Kiekert Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(c)     The Kiekert Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of the Kiekert Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

(d)     The Kiekert Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(e)     The Kiekert Defendants' acts or practices are unfair to purchasers of Side-Door Latches and Latch Minimodules (or Vehicles containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code;

(f)     The Kiekert Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(g)     Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits

that may have been obtained by the Kiekert Defendants as a result of such business acts or practices.

(h)     The illegal conduct alleged herein is continuing and there is no indication that the Kiekert Defendants will not continue such activity into the future.

(i)     The unlawful and unfair business practices of the Kiekert Defendants have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supra-competitive and artificially-inflated prices for Side-Door Latches and Latch Minimodules (or Vehicles containing them). Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j)     The conduct of the Kiekert Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

(k)     As alleged in this Complaint, the Kiekert Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by the Kiekert Defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by the Kiekert Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

225.   The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

(a)    The Kiekert Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Side-Door Latches and Latch Minimodules were sold, distributed or obtained in the District of Columbia.

(b)    The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiffs were not aware of the Kiekert Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by the Kiekert Defendants for Side-Door Latches and Latch Minimodules. The Kiekert Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Side-Door Latches and Latch Minimodules because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges. The Kiekert Defendants' conduct with regard to sales of Side-Door Latches and Latch Minimodules, including its illegal conspiracy to secretly fix the price of Side-Door Latches and Latch Minimodules at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited the Kiekert Defendants at the expense of Plaintiffs and the public. The Kiekert Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from the Kiekert Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there

was a gross disparity between the price paid and the value received for Side-Door Latches and Latch Minimodules.

(c)    The Kiekert Defendants' ' unlawful conduct had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Side-Door Latch prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latch.

(d)    As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. The Kiekert Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

226.    The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

(a)    The Kiekert Defendants' unlawful conduct had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Florida; (2) Side-Door Latch prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and

(4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b) During the Class Period, the Kiekert Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c) As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d) The Kiekert Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

227. The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

(a) The Kiekert Defendants' unlawful conduct had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Side-Door Latch prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b) During the Class Period, the Kiekert Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

77

(c)      As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)      The Kiekert Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

228.      The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

(a)      The Kiekert Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

(b)      The Kiekert Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which Side-Door Latches and Latch Minimodules were sold, distributed, or obtained in Massachusetts and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

(c)      The Kiekert Defendants' unlawful conduct had the following effects: (1) Side-Door Latches and Latch Minimodules price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Side-Door Latches and Latch Minimodules prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs

and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(d)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class were injured and are threatened with further injury.

(e)     The Kiekert Defendants have been or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the Kiekert Defendants not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth. More than thirty days has passed since such demand letters were served, and each of the Kiekert Defendants served has failed to make a reasonable settlement offer.

(f)     By reason of the foregoing, the Kiekert Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. The Kiekert Defendants and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiffs and members of the Damages Class to multiple damages.

229.    The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

(a)     Plaintiffs and the Damages Class purchased Side-Door Latches and Latch Minimodules for personal, family, or household purposes.

(b)     The Kiekert Defendants engaged in the conduct described herein in connection with the sale of Side-Door Latches and Latch Minimodules in trade or commerce in a market that includes Missouri.

(c)     The Kiekert Defendants agreed to, and did in fact, affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Side-Door Latches and Latch Minimodules were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

(d)     The Kiekert Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning its unlawful activities and artificially inflated prices for Side-Door Latches and Latch Minimodules. It concealed, suppressed, and omitted facts that would have been important to Plaintiffs and members of the Damages Class as they related to the cost of Side-Door Latches and Latch Minimodules they purchased.

(e)     The Kiekert Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Side-Door Latches and Latch Minimodules by making public statements that were not in accord with the facts.

(f)     The Kiekert Defendants' statements and conduct concerning the price of Side-Door Latches and Latch Minimodules were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to

believe that they were purchasing Side-Door Latches and Latch Minimodules at prices established by a free and fair market.

(g)     The Kiekert Defendants' unlawful conduct had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Side-Door Latch prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(h)     The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(i)     As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

(j)     Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

230.    The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et seq.*

(a)    The Kiekert Defendants' unlawful conduct had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Montana; (2) Side-Door Latch prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)    During the Class Period, The Kiekert Defendants' illegal conduct substantially affected Montana commerce and consumers.

(c)    As a direct and proximate result of The Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)    The Kiekert Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

231.    The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

(a)      The Kiekert Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Side-Door Latches and Latch Minimodules were sold, distributed or obtained in New Mexico and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

(b)      The aforementioned conduct on the part of the Kiekert Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Side-Door Latches and Latch Minimodules as set forth in N.M.S.A., § 57-12-2E. Plaintiffs were not aware of the Kiekert Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by the Kiekert Defendants for Side-Door Latches and Latch Minimodules. The Kiekert Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Side-Door Latches and Latch Minimodules because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs' could avoid the overcharges. the Kiekert Defendants' conduct with regard to sales of Side-Door Latches and Latch Minimodules, including its illegal conspiracy to secretly fix the price of Side-Door Latches and Latch Minimodules

at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited the Kiekert Defendants at the expense of Plaintiffs and the public. The Kiekert Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from the Kiekert Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Side-Door Latches and Latch Minimodules.

(c)     The Kiekert Defendants' unlawful conduct had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Side-Door Latch prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(d)     During the Class Period, the Kiekert Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Kiekert Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

(f)     The Kiekert Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*,

and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

232.     The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     The Kiekert Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Side-Door Latches and Latch Minimodules were sold, distributed or obtained in New York and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

(b)     The Kiekert Defendants and their co-conspirators made public statements about the prices of Side-Door Latches and Latch Minimodules and products containing Side-Door Latches and Latch Minimodules that the Kiekert Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Side-Door Latches and Latch Minimodules and products containing Side-Door Latches and Latch Minimodules; and the Kiekert Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c)     Because of the Kiekert Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased Side-Door Latches and Latch Minimodules were misled to believe that they were paying a fair price for Side-Door Latches and Latch Minimodules or the price

increases for Side-Door Latches and Latch Minimodules were for valid business reasons; and similarly situated consumers were potentially affected by the Kiekert Defendants' conspiracy.

(d)     The Kiekert Defendants knew that its unlawful trade practices with respect to pricing Side-Door Latches and Latch Minimodules would have an impact on New York consumers and not just the Kiekert Defendants' direct customers.

(e)     The Kiekert Defendants knew that their unlawful trade practices with respect to pricing Side-Door Latches and Latch Minimodules would have a broad impact, causing consumer class members who indirectly purchased Side-Door Latches and Latch Minimodules to be injured by paying more for Side-Door Latches and Latch Minimodules than they would have paid in the absence of the Kiekert Defendants' unlawful trade acts and practices.

(f)     The conduct of the Kiekert Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(g)     The Kiekert Defendants' unlawful conduct had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout New York; (2) Side-Door Latch prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and

(4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(h)      During the Class Period, the Kiekert Defendants marketed, sold, or distributed Side-Door Latches and Latch Minimodules in New York, and the Kiekert Defendants' illegal conduct substantially affected New York commerce and consumers.

(i)      During the Class Period, each of the Kiekert Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Side-Door Latches and Latch Minimodules in New York.

(j)      Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

233.   The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.

(a)      The Kiekert Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Side-Door Latches and Latch Minimodules were sold, distributed or obtained in North Carolina and took efforts to conceal its agreements from Plaintiffs and members of the Damages Class.

(b)      The Kiekert Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by the Kiekert Defendants to cover up its illegal acts. Secrecy was integral to the formation, implementation and maintenance of the

Kiekert Defendants' price-fixing conspiracy. The Kiekert Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. The Kiekert Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. The Kiekert Defendants' public statements concerning the price of Side-Door Latches and Latch Minimodules created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by the Kiekert Defendants' illegal conspiracy. Moreover, the Kiekert Defendants deceptively concealed its unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

(c)     The conduct of the Kiekert Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     The Kiekert Defendants' unlawful conduct had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Side-Door Latch prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina;

(3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(e)     During the Class Period, the Kiekert Defendants marketed, sold, or distributed Side-Door Latches and Latch Minimodules in North Carolina, and the Kiekert Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(f)     During the Class Period, the Kiekert Defendants, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Side-Door Latches and Latch Minimodules in North Carolina.

(g)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. The Kiekert Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

234.   The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

(a)     Members of this Damages Class purchased Side-Door Latches and Latch Minimodules for personal, family, or household purposes.

(b)     The Kiekert Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Side-Door Latches and Latch Minimodules were sold, distributed, or obtained in Rhode Island.

(c)     The Kiekert Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning its unlawful activities and artificially inflated prices for Side-Door Latches and Latch Minimodules. The Kiekert Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, it breached that duty by its silence. The Kiekert Defendants misrepresented to all consumers during the Class Period that its Side-Door Latch prices were competitive and fair.

(d)     The Kiekert Defendants' unlawful conduct had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Side-Door Latch prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(e)     As a direct and proximate result of the Kiekert Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of the Kiekert Defendants' use or employment of

unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Kiekert Defendants' willful and deceptive conduct, as described herein.

(f)     The Kiekert Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of Side-Door Latches and Latch Minimodules, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Side-Door Latches and Latch Minimodules at prices set by a free and fair market. The Kiekert Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Side-Door Latches and Latch Minimodules they purchased.

(g)     The Kiekert Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

235.   The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

(a)     The Kiekert Defendants' combination or conspiracy had the following effects: (1) Side-Door Latches and Latch Minimodules price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Side-Door Latches and Latch Minimodules prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and

members of the Damages Class were deprived of free and open competition; and

(4)     Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(b)     During the Class Period, the Kiekert Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c)     As a direct and proximate result of the Kiekert Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     The Kiekert Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

236.     The Kiekert Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a)     The Kiekert Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Side-Door Latches and Latch Minimodules were sold, distributed, or obtained in Vermont.

(b)     The Kiekert Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning its unlawful activities and artificially inflated prices for Side-Door Latches and Latch Minimodules. The Kiekert Defendants owed a duty to disclose such facts, and considering the

relative lack of sophistication of the average, non-business consumer, The Kiekert Defendants breached that duty by its silence. The Kiekert Defendants misrepresented to all consumers during the Class Period that its Side-Door Latch prices were competitive and fair.

(c)     The Kiekert Defendants' unlawful conduct had the following effects: (1) Side-Door Latch price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Side-Door Latch prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Side-Door Latches and Latch Minimodules.

(d)     As a direct and proximate result of the Kiekert Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of the Kiekert Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Kiekert Defendants' willful and deceptive conduct, as described herein.

(e)     The Kiekert Defendants' deception, including its affirmative misrepresentations and omissions concerning the prices of Side-Door Latches and Latch Minimodules, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Side-Door Latches and Latch Minimodules at prices set by a free and fair market. The Kiekert Defendants' misleading conduct and unconscionable activities constitutes unfair competition

or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(on behalf of Plaintiffs and the Damages Class)**

237.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

238.    Plaintiffs bring this claim under the laws of all states listed in the Second and Third Claims, *supra*.

239.    As a result of its unlawful conduct described above, the Kiekert Defendants have and will continue to be unjustly enriched. The Kiekert Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Side-Door Latches and Latch Minimodules.

240.    The Kiekert Defendants have benefited from its unlawful acts and it would be inequitable for the Kiekert Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs of the members of the Damages Class for Side-Door Latches and Latch Minimodules.

241.    Plaintiffs and the members of the Damages Class are entitled to the amount of the Kiekert Defendants' ill-gotten gains resulting from its unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

242.    Pursuit of any remedies against the firms from which Plaintiffs and the members of the Damages Class purchased Vehicles containing Side-Door Latches and Latch Minimodules subject to the Kiekert Defendants' conspiracy would have been futile.

### PRAYER FOR RELIEF

Accordingly, Plaintiffs respectfully request that:

243.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

244.    That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)    An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)    A *per se* violation of Section 1 of the Sherman Act; and

(c)    An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein.

(d)    Acts of unjust enrichment by the Kiekert Defendants as set forth herein.

245.    Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against the Kiekert Defendants in an amount to be trebled to the extent such laws permit;

246.    Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

247.    The Kiekert Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

248.    Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits the Kiekert Defendants obtained as a result of its acts of unfair competition and acts of unjust enrichment;

249.    Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

250.    Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

251.    Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.


DATED: May 23, 2017                    *s/ Marc M. Seltzer*
                                       Marc M. Seltzer
                                       Steven G. Sklaver
                                       **SUSMAN GODFREY L.L.P.**

1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
Omar Ochoa
**SUSMAN GODFREY L.L.P**.
1000 Louisiana St.
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com
oochoa@susmangodfrey.com

E. Lindsay Calkins
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
lcalkins@susmangodfrey.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

Steven N. Williams
Demetrius X. Lambrinos
Elizabeth Tran

COTCHETT, PITRE &
McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

***Attorneys for Plaintiffs and Interim Co-Lead
Class Counsel for the Proposed End-Payor
Plaintiffs Classes***


THE MILLER LAW FIRM, P.C.

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Devon P. Allard (P71712)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

***Attorneys for Plaintiffs and Interim Liaison
Counsel for the Proposed End-Payor Plaintiffs
Classes***

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, of all issues so triable.


DATED: May 23, 2017                          *s/ Marc M. Seltzer*
                                             Marc M. Seltzer
                                             Steven G. Sklaver
                                             **SUSMAN GODFREY L.L.P.**
                                             1901 Avenue of the Stars, Suite 950
                                             Los Angeles, CA 90067-6029
                                             Telephone: (310) 789-3100
                                             Facsimile: (310) 789-3150
                                             mseltzer@susmangodfrey.com
                                             ssklaver@susmangodfrey.com

                                             Terrell W. Oxford
                                             Chanler A. Langham
                                             Omar Ochoa
                                             **SUSMAN GODFREY L.L.P**.
                                             1000 Louisiana St.
                                             Suite 5100
                                             Houston, TX 77002
                                             Telephone: (713) 651-9366
                                             Facsimile: (713) 654-6666
                                             toxford@susmangodfrey.com
                                             clangham@susmangodfrey.com
                                             oochoa@susmangodfrey.com

                                             E. Lindsay Calkins
                                             **SUSMAN GODFREY L.L.P.**
                                             1201 Third Avenue, Suite 3800
                                             Seattle, Washington 98101
                                             Telephone: (206) 516-3880
                                             lcalkins@susmangodfrey.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

Steven N. Williams
Demetrius X. Lambrinos
Elizabeth Tran
**COTCHETT, PITRE &
McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

*Attorneys for Plaintiffs and Interim Co-Lead
Class Counsel for the Proposed End-Payor
Plaintiffs Classes*

DATED: May 23, 2017                    **THE MILLER LAW FIRM, P.C.**

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Devon P. Allard (P71712)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Attorneys for Plaintiffs and Interim Liaison
Counsel for the Proposed End-Payor Plaintiffs
Classes*

JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

County in which action arose: _____

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Halley Ascher, et al | Kiekert AG and Kiekert U.S.A., Inc. |

| **(b)** County of Residence of First Listed Plaintiff   District of Columbia | County of Residence of First Listed Defendant   Foreign |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br>See Attached | Attorneys *(If Known)* |
|---|---|

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☒ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. Sec. 1

Brief description of cause:
Conspiracy to Fix Prices

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   The Honorable Marianne O. Battani   DOCKET NUMBER   See Attached

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| May 23, 2017 | *s/ Marc M. Seltzer* |

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?          ☐ Yes
                                                                        ■ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


2.          Other than stated above, are there any pending or previously      ■ Yes
            discontinued or dismissed companion cases in this or any other     ☐ No
            court, including state court? (Companion cases are matters in which
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

   If yes, give the following information:

   Court: Eastern District of Michigan _____

   Case No.: See Attached _____

   Judge: Hon. Battani _____


Notes :

## PLAINTIFFS' ATTORNEYS

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
Omar Ochoa
**SUSMAN GODFREY L.L.P**.
1000 Louisiana St.
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com
oochoa@susmangodfrey.com

E. Lindsay Calkins
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
lcalkins@susmangodfrey.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

Steven N. Williams
Demetrius X. Lambrinos
Elizabeth Tran
**COTCHETT, PITRE &
McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

>*Attorneys for Plaintiffs and Interim Co-Lead Class Counsel for the Proposed
>End-Payor Plaintiffs Classes*

E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

>*Attorneys for Plaintiffs and Interim Liaison Counsel for the Proposed End-
>Payor Plaintiffs Classes*

**RELATED CASES**

| | |
|---|---|
| 2:12-md-02311-MOB-MKM | Automotive Parts Antitrust Litigation |
| 2:12-cv-00100-MOB-MKM, *and related sub-cases* | Wire Harness Systems |
| 2:12-cv-00200-MOB-MKM, *and related sub-cases* | Instrument Panel Clusters |
| 2:12-cv-00300-MOB-MKM, *and related sub-cases* | Fuel Senders |
| 2:12-cv-00400-MOB-MKM, *and related sub-cases* | Heater Control Panels |
| 2:12-cv-00500-MOB-MKM, *and related sub-cases* | Bearings |
| 2:12-cv-00600-MOB-MKM, *and related sub-cases* | Occupant Safety Systems |
| 2:13-cv-00700-MOB-MKM, *and related sub-cases* | Alternators |
| 2:13-cv-00800-MOB-MKM, *and related sub-cases* | Anti-Vibrational Rubber Parts |
| 2:13-cv-00900-MOB-MKM, *and related sub-cases* | Windshield Wipers |
| 2:13-cv-01000-MOB-MKM, *and related sub-cases* | Radiators |
| 2:13-cv-01100-MOB-MKM, *and related sub-cases* | Starters |
| 2:13-cv-01200-MOB-MKM, *and related sub-cases* | Automotive Lamps |
| 2:13-cv-01300-MOB, *and related sub-cases* | Switches |
| 2:13-cv-01400-MOB, *and related sub-cases* | Ignition Coils |
| 2:13-cv-01500-MOB, *and related sub-cases* | Motor Generators |
| 2:13-cv-01600-MOB, *and related sub-cases* | Steering Angle Sensors |
| 2:13-cv-01700-MOB, *and related sub-cases* | HID Ballasts |
| 2:13-cv-01800-MOB, *and related sub-cases* | Inverters |
| 2:13-cv-01900-MOB, *and related sub-cases* | Electronic Powered Steering Assemblies |
| 2:13-cv-02000-MOB, *and related sub-cases* | Air Flow Meters |
| 2:13-cv-02100-MOB, *and related sub-cases* | Fan Motors |
| 2:13-cv-02200-MOB, *and related sub-cases* | Fuel Injection Systems |
| 2:13-cv-02300-MOB, *and related sub-cases* | Power Window Motors |
| 2:13-cv-02400-MOB, *and related sub-cases* | Automatic Transmission Fluid Warmers |
| 2:13-cv-02500-MOB, *and related sub-cases* | Valve Timing Control Devices |
| 2:13-cv-02600-MOB, *and related sub-cases* | Electronic Throttle Bodies |
| 2:13-cv-02700-MOB, *and related sub-cases* | Air Conditioning Systems |
| 2:13-cv-02800-MOB, *and related sub-cases* | Windshield Washer Systems |
| 2:14-cv-02900-MOB-MKM, *and related sub-cases* | Constant Velocity Joint Boot Products |

| | |
|---|---|
| 2:15-cv-03000-MOB-MKM, *and related sub-cases* | Spark Plugs |
| 2:15-cv-03100-MOB-MKM, *and related sub-cases* | Oxygen Sensors |
| 2:15-cv-03200-MOB-MKM, *and related sub-cases* | Automotive Hoses |
| 2:15-cv-03300-MOB-MKM, *and related sub-cases* | Shock Absorbers |
| 2:15-cv-03400-MOB-MKM, *and related sub-cases* | Body Sealing Products |
| 2:16-cv-03500-MOB-MKM, *and related sub-cases* | Interior Trim Products |
| 2:16-cv-03600-MOB-MKM, *and related sub-cases* | Brake Hoses |
| 2:16-cv-03700-MOB-MKM, *and related sub-cases* | Exhaust Systems |
| 2:16-cv-03800-MOB-MKM, *and related sub-cases* | Ceramic Substrates |
| 2:16-cv-03900-MOB-MKM, *and related sub-cases* | Power Window Switches |
| 2:16-cv-04000-MOB-MKM, *and related sub-cases* | Automotive Steel Tubes |
| 2:16-cv-04100-MOB-MKM, *and related sub-cases* | Access Mechanisms |